433 A.2d 459

David Paul YANDRICH, Administrator of the Estate of
George Yandrich, Deceased, Appellant,

v.

Martin J. RADIC, Appellee.

Supreme Court of Pennsylvania.

Argued May 19, 1981.

Decided July 10, 1981.

Reargument Denied Aug. 10, 1981.

244

Richard C. Angino, Harrisburg, for appellant.

Richard H. Wix, Harrisburg, for appellee.

Before ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## ORDER

PER CURIAM.

The Court, being equally divided, the order of the Superior Court is affirmed.

NIX, J., filed an opinion in support of affirmance.

WILKINSON, J., filed an opinion in support of affirmance in which ROBERTS, J., joins.

FLAHERTY, J., filed an opinion in support of reversal in which LARSEN and KAUFFMAN, JJ., join.

O'BRIEN, C.J., did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE

WILKINSON, Justice.

This is an appeal from an order of the Superior Court, 286 Pa.Super. 626, 427 A.2d 247, affirming the order of the trial court sustaining appellee's preliminary objection in the nature of a demurrer and dismissing appellant's complaint for failure to state a cause of action in trespass.

The specific question presented for our review is whether a cause of action for negligent infliction of emotional distress exists on behalf of a father whose son was fatally injured after being struck by an automobile where the father was neither a witness to the accident nor in the immediate vicinity thereof, but arrived at the accident scene after the injured son had already been taken to the hospital.

The instant complaint transcends established foreseeable limits of liability in third party emotional distress cases and advocates establishment of an open-ended standard which will result in the imposition of greatly expanded liability. We find that the demurrer was properly sustained and therefore affirm the order of the Superior Court.

Since this appeal is from the sustaining of a preliminary objection in the nature of a demurrer, we accept as true all well pleaded material facts set forth in the complaint and every reasonable inference deducible therefrom. *Papieves v. Kelly*, 437 Pa. 373, 263 A.2d 118 (1970).

The pertinent facts are as follows. On Sunday, June 26, 1977, George N. Yandrich, nineteen year old son of George Yandrich, was severely injured when his bicycle was struck by an automobile operated by appellee. The father did not witness his son's accident, nor was the father in the immediate vicinity of the accident scene. After being informed of the accident, the father hurried to the scene only to learn that his son had already been taken to the hospital. The father then proceeded to the hospital and remained there until the boy died five days later. After the death of his son, the father began to drink heavily, became despondent, lost all regard for personal hygiene, cried continuously and remarked that he had no desire to continue living. Some three months later, October 4, 1977, he committed suicide by a self-inflicted gunshot wound.

Appellant, surviving son and administrator of his father's estate filed this action in trespass under the Wrongful Death and Survival Acts seeking damages for the emotional trau-

ma and subsequent suicide of his father.[1] The complaint avers that appellee's negligence in driving over the boy's bicycle and causing his death was the precipitating cause of the father's depression and resultant suicide.

Appellee demurred to the complaint contending that no recovery could be granted because the father did not sustain physical impact, was not within the "zone of danger," and neither witnessed nor was in close proximity to the accident in which his son sustained fatal injuries. The trial court sustained the demurrer relying on our decision in *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970), which prohibits recovery for negligently inflicted emotional distress where the individual is not within the "zone of danger."[2] The Superior Court affirmed on the basis of the trial court's opinion and this appeal followed.

As properly noted by the parties on appeal, a plurality of the Court recently modified the "zone of danger" rule and allowed recovery for emotional distress where the complaining party, although outside the area of danger, actually witnessed the negligent act which killed a close family member. *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979).[3]

In *Sinn*, Mr. Justice Nix examined the traditional tort concept of foreseeability and extended recovery beyond the traditional "zone of danger" without creating a standard which would subject tortfeasors to unlimited liability. In formulating this standard of foreseeability the opinion placed great weight on three factors set out by the Califor-

1. Appellant also filed a separate action in trespass against appellee seeking recovery under the Wrongful Death and Survival Acts on behalf of the estate of his deceased brother, George N. Yandrich, who died of injuries received in the accident of June 26, 1977.

2. *See* Mr. Justice Robert's opinion for the Court in *Niederman, supra*, for a detailed discussion of Pennsylvania's abandonment of the "impact rule" in favor of the "zone of danger" test.

3. In *Sinn* at notes 15 and 21, the plurality strictly limited its decision to those cases in which the injured party had actually witnessed the defendant's negligent act. The Court refused to comment on the situation presently before us noting that the issue was best left for a more appropriate record.

nia Supreme Court in *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968) as determinative of whether third party emotional distress injuries were foreseeable. The factors are as follows:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Sinn v. Burd*, 486 Pa. at 170, 404 A.2d at 685 (quoting *Dillon v. Legg*, 69 Cal.Rptr. at 80, 441 P.2d at 920). In applying the above standard of foreseeability to the facts before it, the plurality in *Sinn* concluded that

[i]t is clear that appellant's injuries were of a nature reasonably foreseeable under the circumstances alleged. Where the bystander is a mother who witnessed the violent death of her small child and the emotional shock emanated directly from personal observation of the event, we hold as a matter of law that the mental distress and its effects is a foreseeable injury.

*Id.*, 486 Pa. at 173, 404 A.2d at 686 (footnote omitted).

Since the first and second factors of the three pronged foreseeability test set forth in *Sinn* are totally lacking here, appellant's prayer for relief cannot be granted on the basis of that case.[4]

Appellant argues that the emotional trauma suffered by a parent upon learning of the negligent injury of a loved one is no less foreseeable than the trauma suffered by a parent who actually witnesses the tragic event. It is suggested that requiring contemporaneous observation of the accident

4. *Cf. Hoffner v. Hodge*, 47 Pa.Cmwlth. 277, 407 A.2d 940 (1979) (cause of action for negligent infliction of mental distress dismissed where the plaintiffs were not present at the scene of the negligent event alleged to have caused the harm).

represents an artificial attempt to limit liability which will ultimately result in arbitrary, piecemeal determinations. Quite the contrary, appellant's logic may be irrefutable but, as pointed out by Justice Holmes, "the life of the law has not been logic: it has been experience." [5] We are unwilling to abandon the concept of "zone of danger" in toto and enter a realm of uncertainty with no workable guidelines for recovery.

Therefore, I would affirm the order of the Superior Court.

ROBERTS, J., joins.

O'BRIEN, C.J., did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Justice.

The issue in this appeal is whether the trial court properly dismissed appellant's complaint which sought to recover for emotional distress suffered by a father whose son died from injuries after being struck by an automobile driven by appellee, although the father did not witness the accident and arrived on the scene after its occurrence. The injured son had been taken to the hospital when the father arrived.[1]

I agree that the trial court properly found that a cause of action had not been stated in the complaint filed.

For years this jurisdiction followed the "impact rule" which prevented the complaining party from recovering damages for negligently inflicted mental distress unless the distress was accompanied by a physical impact upon the person of the complaining party. *Bosley v. Andrews*, 393 Pa. 161, 142 A.2d 263 (1958); *Potere v. Philadelphia*, 380 Pa. 581, 589, 112 A.2d 100, 104 (1955); *Huston v. Freemansburg Borough*, 212 Pa. 548, 61 A. 1022 (1905); *Ewing v. Pitts-*

5. O.W. Holmes, Jr., The Common Law 1 (1881).

1. The appellant is the administrator of the estate of the father, who allegedly committed suicide as a result of the emotional stress caused by the son's injury and subsequent death.

*burgh Railway Co.*, 147 Pa. 40, 23 A. 340 (1892). *See also Battalla v. State*, 10 N.Y.2d 237, 240, 219 N.Y.S.2d 34, 36, 176 N.E.2d 729, 730 (1961); *Jones v. Brooklyn Heights R.R. Co.*, 23 App.Div. 141, 48 N.Y.S. 914 (1897). This Court departed from the strict "impact rule" in our decision in *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970).

In *Niederman* we adopted what became known as the zone of danger theory. This theory provided that where a plaintiff is in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually fears the physical impact, he can recover for the shock, mental pain, and physical injuries attendant to the negligent incident even though the plaintiff was not physically touched by the negligent force.

More recently in *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979), it was recognized that the Niederman zone of danger test was too restrictive in a situation where the plaintiff actually witnessed the accident which caused serious injury to one having close relationship with the plaintiff and, as a result of the impact of the event, sustained emotional shock resulting in mental as well as physical injuries to the witnessing plaintiff.

Thus the law developed from an initial requirement that the critical traumatic event must be a physical impact upon the plaintiff to the intermediate step where the impact was the plaintiff's personal exposure to the negligent force and finally in *Sinn* to the exposure of the emotional shock emanating directly from the personal observation of the event. The decision in *Sinn* expressly left for another day the question of liability when the plaintiff is notified of the accident by another. 486 Pa. at 173 n. 21, 404 A.2d at 686 n. 21.

The progression of the law relating to the question of responsibility for emotional distress caused to another because of one's negligent conduct, emphasizes the fact that a ruling as to what duty is owed is a legal judgment which must accommodate the demands of public policy in determining whether the law will countenance a shifting of the

burden of loss in a particular situation. The concept of foreseeability is one of the factors employed in determining and defining the duty owed. My disagreement with the dissent is their view of foreseeability as merely a factual issue to be determined by a finder of fact. To the contrary, foreseeability is a tool to be used in making the legal judgment as to whether liability should attach.

> The formulation of the duty owed as recognized in *Sinn* is the more complex and interwoven societal relations become the greater the responsibility one must accept for his or her conduct. In determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than 'the sum total of those considerations of policy which lead the law to say the particular plaintiff is entitled to protection' from the harm suffered. [Citation omitted.] To give it any greater mystic would unduly hamper our system of jurisprudence in adjusting to changing times. *Id.*, 486 Pa. at 164, 404 A.2d 672.

Where a parent or close blood relative actually witnesses a traumatic serious injury to a loved one, we expressed in *Sinn* that the emotional impact reverberating from that event was at least as potent as that which flowed from the personal exposure to danger under the zone of danger theory articulated in *Niederman*.

In *Sinn* we also recognized the traditional view that *solatium*[2] was not compensable. In *Sinn* we noted that damages were not to be awarded to allay the grief resulting from the loss, but rather to compensate for the shock of actually witnessing the event.

In my judgment, if we were to accept the position of the dissent, we would clearly embrace recovery from *solatium*. The plaintiff's alleged injuries would not have resulted from

---

**2.** Solatium, or solace, describes a type of monetary damages awarded the decedent's survivors to recompense them from the feelings of anguish, bereavement, and grief caused by the fact of the decedent's death. Although most civil law nations provide such damages for the bereaved relatives, it has been steadfastly rejected by the common law (cites omitted).
486 Pa. 152 n. 3, 404 A.2d at 675 n.3.

a traumatic impact upon the person of the plaintiff; it would not have resulted from his exposure within the zone of danger; nor would it have resulted from the emotional impact of the situation that he witnessed.

The common theme between the three theories is that in each instance the negligence of the actor results in a sensory experience that causes the resulting mental distress. In this instance if relief were to be granted it is clear that we would be erasing the longstanding tradition of denial of recovery for grief. The effects of the negligence of appellee went no further than to create the situation that occasioned the grief of appellant.

## OPINION IN SUPPORT OF REVERSAL

FLAHERTY, Justice.

This is an appeal from an Order of the Superior Court affirming an Order of the Court of Common Pleas of Dauphin County, which dismissed the complaint of appellant, David Paul Yandrich, for failure to state a claim upon which relief could be granted. Appellant is the administrator for the estate of George Yandrich (hereinafter Mr. Yandrich), who committed suicide allegedly as the result of emotional distress caused by the negligence of appellee, Martin J. Radic. The sole issue on appeal is whether appellant's complaint asserts a cause of action cognizable in this Commonwealth.

According to the complaint, the factual background of this case is that five children were born to Mr. and Mrs. Yandrich; the first three of these children, while still in their infancy, died when Mr. Yandrich's car, left unattended with the children inside, rolled into a reservoir and sank. Mrs. Yandrich died some years after this accident, and on June 26, 1977 the fourth child was fatally injured when the bicycle he was riding was struck by an automobile operated by the appellee. Mr. Yandrich was not a witness to the accident, nor was he in the immediate vicinity at the time of the occurrence. Upon notification of the accident, Mr.

Yandrich went to the accident scene, but found that his son had already been removed to a hospital. He then proceeded to the hospital, where he remained for five days until his son died. Following his son's death, Mr. Yandrich became listless and despondent, failed to take care of his personal clothing, drank heavily, and cried much of the time, saying that he had no desire to continue living. On October 4, 1977, Mr. Yandrich took his own life.

On December 20, 1978 appellant filed two separate actions in trespass: a wrongful death and survival action on behalf of the estate of George N. Yandrich, the child who was killed in the accident of June 26, 1977; and the present wrongful death and survival action on behalf of the estate of Mr. Yandrich, seeking recovery for the negligent infliction of emotional distress and the resultant suicide of Mr. Yandrich. The trial court reluctantly sustained appellee's preliminary objections in the nature of a demurrer on the grounds that the complaint did not aver that Mr. Yandrich sustained physical impact, or that he witnessed or was in the vicinity of the accident.

The trial court correctly noted that our decision in *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970) held that recovery for emotional injury caused by a defendant's negligent conduct requires that the person claiming emotional injury be within the zone of danger. At the time of the trial court's opinion, our decision in *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979) had not been handed down. In *Sinn* we permitted recovery by a mother who, although not within the zone of danger, witnessed the fatal injury to one of her children, struck by a car as the child stood alongside the road in front of her house. We granted allocatur in the present case to decide whether the rule of *Sinn* should be expanded to include recovery for emotional injury to a parent who learns of, but does not witness, physical injury to his child.

The arguments favoring denial of a cause of action for negligently inflicted emotional distress, where the plaintiff is a parent who was not in the zone of danger, were considered and rejected in *Sinn v. Burd*, supra. These

included the difficulties of 1) establishing a causal link between the psychic damage and the child's injury; 2) opening the way for fraudulent claims of fictitious injuries; 3) increasing the number of cases litigated; and 4) imposing unlimited or unduly burdensome liability. These arguments, when raised in the context of the present case, where the parent has not witnessed the accident in question, are no more convincing than they were in the situation presented by *Sinn.*

In view of the extension of liability permitted by this Court in *Sinn,* the instant case presents only a narrow question: whether to hinge recovery for emotional distress to a parent on the parent's having witnessed the injury to his child. Mr. Justice Roberts, writing for the majority in *Niederman v. Brodsky,* supra, articulated what should serve as our guiding principle of analysis: " 'It is fundamental to our common law system that one may seek redress for every substantial wrong.' " 436 Pa. at 403, 261 A.2d at 85. It is clear that in most cases, a parent's receipt of news that his child has been killed in an accident will cause the parent severe emotional distress. Whether such distress actually exists and was caused by the defendant's negligence is a question for the jury. See *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111 (1977). Legally, this distress, if it exists, is a "substantial wrong." We can discern no reason, either in justice or public policy, why the liability of the tortfeasor should not be extended to cover such a wrong.

In *Sinn v. Burd,* we had no difficulty extending liability for emotional distress to a parent who witnessed her child being struck and killed by an automobile. There should be no hesitation to permit recovery for the emotional distress experienced by a parent who, although he did not witness the accident, nevertheless experienced emotional trauma because of his son's injury. There is substantial injury in both cases. Who can say that the emotional strain experienced by the parent witnessing the death of his child is greater than the emotional strain experienced by a parent sitting helplessly in a hospital while his child dies? Certain-

ly, the experiences of the parents are different, but each has an inescapable common element: the child is dead.

Indeed the injury in the present case was as foreseeable as the injury in *Sinn v. Burd*, supra. The trial court, while reluctantly recognizing that it was constrained by precedent to deny appellant's cause of action, very appropriately capsulized the foreseeability issue as follows:

> Certainly one can foresee that the killing of an individual will cause emotional trauma to others. The emotional trauma can be just as real, just as devastating, whether one is in the "zone of danger" or whether one is a bystander or whether one comes upon the scene and sees the individual on the ground, or whether one sees the individual in the hospital or in a morgue or never sees them; none of these situations is any more or less foreseeable than the other.

The concept of foreseeability is a device which courts have adopted to express, as a matter of policy, where liability should end. It is equally foreseeable, for example, that the killing of an individual will result in emotional trauma to the victim's friends, relatives, or even business associates. If any of these persons—friends, relatives or business associates—are told of the death of the victim, any of them may experience emotional trauma, depending upon the nature of the person's relationship to the victim. Nevertheless, the scope of liability for emotional distress caused by injuries to others must be limited, as a matter of public policy, to achieve a reasonably circumscribed ambit of liability. This case presents us with a parent-plaintiff and a child-victim. Whether liability for emotional distress could be extended to situations where the plaintiff is other than a parent is a question which we leave for a future case. Where the parent-child relationship is concerned, serious emotional distress to the parent from the child's death is so likely to occur as to render it unjust to deny a cause of action. However, in deciding the merits of any given case, it is a question of fact for the jury to determine whether defendant's act constituted a substantial factor in causing emotional harm

to the parent. As we stated in *Ford v. Jeffries*, this determination

involves the making of a judgment as to whether the defendant's conduct although a cause in the "but for" sense is so insignificant that no ordinary mind would think of it as a cause for which a defendant should be held responsible.

. . . .

The determination of whether the conduct of the defendant was a substantial cause or an insignificant cause of plaintiff's harm should not be taken from the jury if the jury may reasonably differ as to whether the conduct of the defendant was a substantial cause or an insignificant cause.

474 Pa. at 594–595, 379 A.2d at 114.

It is argued that in the present case recovery should not be permitted because the person delivering news of the serious injury or death may have contributed to the emotional trauma, and thus, that the defendant should not be held responsible for emotional distress inflicted by an agency over which he had no control. Granted, the severity of the emotional impact suffered when one has not witnessed an accident is dependent, in part, on the manner in which one is informed of the occurrence. A parent, upon receiving from a third party an unreasonably abrupt, insensitive, or exaggerated report that his child has been injured, may suffer more severe emotional distress than one who is informed in a reasonable and accurate manner. Yet, this is not a reason to deny the existence of a cause of action against the defendant; rather, it is a reason to instruct the jury that the defendant shall not be held liable for the increment of distress which is attributable to a report by a third party which was so extraordinary as not to have been reasonably foreseeable. *Whitner v. Lojeski*, 437 Pa. 448, 462, 263 A.2d 889, 896 (1970), *Hendricks v. Pyramid Motor Freight Corp.*, 328 Pa. 570, 574, 195 A. 907 (1938).

Finally, we reject the idea that fatal injuries to children are a normal part of living. In *Sinn v. Burd*, supra, this

Court stated that "we cannot accept the callous view . . . that the possibility of a sudden and violent termination of a young life is a *risk assumed* in child rearing. . ." (Emphasis added). 486 Pa. at 172, 404 A.2d at 686. We need not now decide what lesser dangers are within the ambit of the risk assumed in child rearing, for the instant case concerns the death of a child. Thus, we would hold that when a parent learns of the injury and consequent death of his child, and as a result the parent suffers *severe* emotional distress, a cause of action will lie against the negligent actor.

LARSEN and KAUFFMAN, JJ., join in this Opinion in Support of Reversal.

O'BRIEN, C. J., did not participate in the consideration or decision of this case.