## Hackett v. United Airlines

*Joseph L. Foley,* for plaintiff.
*Jonathan Ziss,* for defendant United Airlines.

BROWN, *J.,* October 30, 1986—Plaintiff, Frances C. Hackett, individually and as executrix of the estate of Catherine A. Cook, filed a complaint against United Airlines and William R. May Funeral Home Inc. She alleges that on December 6, 1984, May was retained to arrange shipment of the decedent's remains to a chapel in San Francisco, Calif. With May's assurance that no harm would come to the corpse, she purchased a bronze casket in lieu of a shipping crate to transport it. It is alleged that May negligently prepared the body and casket for shipment and did not declare a value for damage. Likewise, United is charged with negligently and carelessly handling the remains, resulting in the body arriving in a damaged condition. The casket was severely dented across the top and there were numerous dents along the sides. The dents caused Ms. Hackett great humiliation, embarrassment and mortification during the funeral service, according to the complaint.

Ms. Hackett alleges she suffered "great mental anguish," embarrassment, humiliation, emotional

disturbance and suffering requiring medical assistance. She also expended additional money to bury her mother.

Both defendants filed preliminary objections in the nature of a demurrer, and on September 15, 1986, we sustained the objections as to the claims for emotional distress, mental anguish, humiliation, etc., and any medical expense thereby incurred, but not the losses caused by damage to the casket, etc.

A demurrer admits as true all well and clearly pleaded factual averments and all inferences fairly deducible therefrom. The complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle plaintiff to the relief she seeks. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672, 674 (1979).

Ms. Hackett contends we erred and cites *Papieves v. Kelly,* 437 Pa. 373, 263 A.2d 118 (1970) to support her claim that a cause of action for interference with dead bodies exists.

*Papieves* adopted section 868 of the Restatement of Torts (1939)[1] and allowed recovery for serious mental or emotional distress caused by the intentional and wanton mishandling of a decedent's body. Relying on *Neiderman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970), the court rejected the "impact rule" under those facts. That rule, set forth in *Bosley v. Andrews,* 393 Pa. 161, 142 A.2d 263 (1958), precludes recovery for the negligently inflicted consequences of fright, shock or emotional

---

1. Section 868 of the Restatement of Torts (1939) states:

"§868. Interference with Dead Bodies

"A person who wantonly mistreats the body of a dead person or who without privilege intentionally removes, withholds or operates upon the dead body is liable to the member of the family of such person who is entitled to the diposition of the body."

disturbance absent some contemporary physical impact with, or some physical injury to plaintiff.

Ms. Hackett also relies on section 868 of the Restatement (Second) of Torts (adopted and promulgated 1977):

"§868 Interference with Dead Bodies

"One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body."

There are no Pennsylvania cases adopting section 868 of the Restatement (Second) of Torts (1977), and since the first Restatement allows recovery only for intentional or wanton mistreatment of a dead body it is of no help to plaintiff. See also, *Berardi v. Johns-Manville Corp.*, 334 Pa. Super. 36, 45, 482 A.2d 1067 (1984).

Unless the case comes within the *Papieves* doctrine, there can be no recovery for negligent infliction of emotional distress unless the requirements of *Neiderman*, supra, or *Sinn*, supra, are met.

In *Neiderman*, supra, Harry Neiderman watched as a car skidded onto a sidewalk and struck his son who was standing next to him. Within minutes he suffered severe chest pain and was hospitalized for five weeks. The court abandoned the requirement of physical impact as a pre-condition to recovery where plaintiff was in danger of physical impact bacause of the direction of the negligent force and where plaintiff actually did fear the physical impact. *Neiderman*, supra at 90. This test became known as the "zone of danger" theory.

598

In *Sinn,* supra, the court in a plurality opinion[2] modified the "zone of danger" theory. Plaintiff sought to recover damages for physical and mental injuries incurred when she saw her minor daughter hit and killed by a car, although plaintiff herself was not within the zone of physical danger and had no reason to fear for her physical safety. Justice (now Chief Justice) Nix wrote:

"Since we have determined that a tortfeasor's liability for mental distress is not to be denied solely because plaintiff was beyond the zone of physical danger, we must examine whether the injuries sustained [by plaintiff] were reasonably forseeable." *Sinn,* supra at 686.

The court placed great weight on the three-pronged test used in *Dillon v. Legg,* 69 Cal. Rptr. at 80, 441 P.2d at 920, to determine whether injury to plaintiff was reasonably forseeable. The three factors (only the third of which is even arguably present here) are:

"(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance from it,

"(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence,

"(3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship."

---

2. Justice Nix filed the opinion, Chief Justice Eagen filed a concurring opinion, Justice Larsen concurred in the result, Justice Roberts filed a dissenting opinion in which Justice O'Brien joined. Justice Manderino filed no opinion, but apparently supported the judgment of the court.

The court in *Sinn* allowed recovery for emotional distress where plaintiff, although outside the zone of danger, actually witnessed the negligent act which killed a close family member, and by footnotes 15 and 21, limited its decision to the facts of the case.

In *Yandrich v. Radic,* 495 Pa. 243, 433 A.2d 459 (1981), a father did not see his son's accident, nor was he in the vicinity. The Supreme Court was equally divided on the question of whether a plaintiff must witness defendant's negligent actions to recover.[3]

In *Brooks v. Decker,* 343 Pa. Super. 497, 495 A.2d 575 (1985), the Superior Court upheld an order sustaining a demurrer, stating that a parent does not have a legally recognized cause of action for negligently inflicted emotional distress caused by injuries to a child inflicted by an accident which the parent did not observe. The Superior Court went on to state:

"If, as appellant contends, the law should now be changed to include such a cause of action, that change must come from the Supreme Court."

The common theme of the impact rule of *Bosley v. Andrews,* the zone of danger theory of *Neiderman,* and the witnessing of the negligent act in *Sinn* is that in each the act of defendant immediately results in a sensory experience causing mental distress. *Vattimo v. Lower Bucks Hosp. Inc.,* 502 Pa. 241, 262, 465 A.2d 1231 (1983) (Nix, *J.,* concurring).

---

3. Justice Nix filed an· opinion in support of affirmance. Justice Wilkinson filed an opinion in support of affirmance which Justice Roberts joined. Justice Flaherty filed an opinion in support of reversal in which Justice Larsen and Kauffman joined.

In this case Ms. Hackett neither witnessed the negligent action as required by *Sinn* nor was she in any danger as required by *Neiderman.* If there be a cause of action for the emotional distress caused by the negligent handling of dead bodies out of sight of relatives, its declaration lies with the Supreme Court of Pennsylvania.[4]

4. See the recent case of *Mazzogatti v. Everingham,* 125 E.D. Appeal Docket, 10/16/86 affirming 341 Pa. Super. 626, 491 A.2d 925 (1985).